**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **NCMIC Insurance Company** | : | |
| | : | |
| Plaintiff | : | Case No. 18-cv-533 |
| | : | |
| v. | : | Judge Sargus |
| | : | |
| **Ryan D. Smith, D.C., et al.,** | : | |
| | : | |
| Defendants | : | |

<u>**DEFENDANT JANE DOE'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT, OR, IN THE ALTERNATIVE, STAY PROCEEDINGS**</u>

Now comes Defendant, Jane Doe, by and through the undersigned counsel, and hereby moves this Honorable Court for an order dismissing Plaintiff's Complaint, or, alternatively, staying the proceedings until the conclusion of the underlying state court litigation. A Memorandum in Support is attached hereto and incorporated herein by reference.

Respectfully submitted,

*/s/ Alexander J. Durst*
Alexander J. Durst          0089819
Attorney for Defendant Jane Doe
The Durst Law Firm
810 Sycamore St., 2nd Floor
Cincinnati, OH 45202
Tel: (513) 621-4999
Fax: (513) 621-0200
Email: alex@durstlawfirm.com

## MEMORANDUM IN SUPPORT

### I.  INTRODUCTION & STATEMENT OF FACTS

This case is a declaratory judgment action filed by Plaintiff, NCMIC Insurance Company. NCMIC seeks a declaration that it has no duty to defend or indemnify its insured, chiropractor Ryan D. Smith, in two underlying state court lawsuits filed against him in state court well before NCMIC initiated the instant case. There are no claims or issues of federal law in either this declaratory judgment action or the underlying state law litigation – the state cases allege Ohio common law claims against Smith, and the insurance coverage question posed in this action requires application of Ohio law to the insurance contract between NCMIC and Smith. Furthermore, the insurance coverage question is already being litigated in one of the state cases. Pursuant to a plethora of longstanding Sixth Circuit and United States Supreme Court case law, this court should, respectfully, decline to extend federal jurisdiction. As noted by the Sixth Circuit:

> [I]ssues of "insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Bituminous,* 373 F.3d at 815. We have often observed that " '[s]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation.' " *Id.* (quoting *Mercier,* 913 F.2d at 279). <u>This concern has been frequently applied in cases of insurance contract interpretation and we have held on a number of occasions that a district court should stay or dismiss complaints filed by insurance companies seeking a declaratory judgment as to their underlying state court lawsuits.</u> *See, e.g., Bituminous,* 373 F.3d at 812–13; *Scottsdale,* 211 F.3d at 968–69; *Employers' Fire Ins. Co. v. Danis Bldg. Constr. Co.,* No. 99–3982, 2000 WL 1234321 (6th Cir. Aug. 22, 2000) (unpublished); *Omaha Prop. & Cas. Ins. Co. v. Johnson,* 923 F.2d 446, 448 (6th Cir.1991); *Mercier,* 913 F.2d at 277; *Am. Home Ass. Co. v. Evans,* 791 F.2d 61, 63 (6th Cir.1986); *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.,* 791 F.2d 460, 462 (6th Cir.1986).

*Travelers Indem. Co. v. Bowling Green Professional Assoc., PLC*, 495 F.3d 266, 272-73 (6th Cir.2007) (emphasis added).

### A.  The Underlying Cases in State Court

The first case against Smith is a putative class action captioned as *Jane Doe, on behalf of herself and all others similarly situated v. Ryan D. Smith, et al.*, Case No. 18CV003487, which was filed on April 25, 2018.[1] The second is *Susanne Horner v. Ryan D. Smith*, Case No. 18CV003645, filed on May 1, 2018.[2] Both of these cases were filed in the Franklin County Court of Common Pleas and solely allege state law causes of action. The *Jane Doe* case includes the following factual allegations:

- Smith was, at all times relevant to this case, a chiropractor licensed to practice chiropractic medicine in the State of Ohio.[3]

- [Jane Doe] sought chiropractic treatment from [Ryan D. Smith] for a medical condition and was treated by Defendant on four occasions in May and June of 2017.

- In the middle of [Jane Doe]'s second session with Smith, Smith touched [Jane Doe]'s breasts while he was performing a chiropractic procedure on [Jane Doe].

- There was no therapeutic reason for Smith to touch [Jane Doe]'s breasts.

- Prior to Smith touching [Jane Doe]'s breasts, [Ryan D. Smith] failed to disclose to [Jane Doe] beforehand that the chiropractic procedure would entail exposure or contact with her breasts, or that it entailed a risk of exposure or contact with her breasts.

- [Ryan D. Smith] further failed to explain to [Jane Doe] the medical necessity of the procedure that involved exposure or contact with her breasts, offer [Jane Doe] the presence of a third party, or provide a signed consent.

- During the same visit, Smith positioned [Jane Doe]'s hand behind her back at waist level in order to perform a chiropractic procedure (manipulation of [Jane Doe]'s shoulder) and, while leaning forward to apply the necessary pressure to complete the procedure and holding [Jane Doe]'s arm firmly in place, pressed his genitals into [Jane Doe]'s hand.

- Prior to performing this procedure, [Ryan D. Smith] failed to disclose to [Jane Doe] that it would entail Smith's genitals pressing into [Jane Doe]'s hand, or that it entailed a risk of

---

[1] A copy of the Second Amended Complaint Jane Doe is seeking leave to file against Smith is attached as Exhibit A.
[2] A copy of Susanne Horner's Complaint against Smith is attached as Exhibit B.
[3] Ryan D. Smith's limited liability company and d/b/a, Synergy Chiropractic Wellness Clinic, LLC, is also a Defendant in both the *Jane Doe* case and the *Horner* case. For simplicity, Smith and Synergy Chiropractic Wellness Clinic, LLC are simply referred to as "Smith" herein.

such, nor did he explain the medical necessity, offer [Jane Doe] the presence of a third party, or provide a signed consent.

- During [Jane Doe]'s next session, Smith touched [Jane Doe]'s breasts in the same manner as he did during the second visit and pressed his genitals into her hand in the same manner as he did during the second visit, both as explained above in detail, and again failed to make the disclosures noted above. Both of these things also occurred at [Jane Doe]'s last session.

- Upon information and belief, in addition to Plaintiff, Smith perpetrated the *exact same* acts against at least 46 other women, in the exact same manner. Smith touched these women's breasts, insisted they remove their bras, manipulated their gowns to expose their breasts, and used the guise of performing a shoulder manipulation to press his genitals into their hands.

Exh. A, at 4-7. On these facts, Jane Doe alleges state law causes of action against Smith, including alternative claims for negligence/chiropractic malpractice, including a separate and distinct malpractice claim for failure to obtain informed consent, and intentional torts. Id., at 10-15. The *Jane Doe* case is filed as a class action because Smith perpetrated the exact same acts against numerous other women.[4] Id. The *Horner* case alleges virtually identical facts and essentially the same state law causes of action. *See* Exh. B. Neither case alleges any federal claims or implicates any issue of federal law – all the claims in both cases arise under Ohio law.

While not mentioned in NCMIC's Complaint, there is actually a third case pending against Smith in the Franklin County Court of Common Pleas, which is captioned as *Christianna M. Duncan v. Ryan D. Smith, D.C., et al.*, Case No. 18CV004082, filed on May 15, 2018.[5] The allegations and claims asserted in this case mirror those of the *Jane Doe* and *Horner* cases. NCMIC, however, did not name Duncan as a party to this case.

---

[4] As a result of 47 women coming forward as of April 12, 2018, Smith has been criminally charged with 66 counts of gross sexual imposition. *See* The Columbus Dispatch, *Chiropractor Faces New Charges as More Women Allege Sexual Contact*, http://www.dispatch.com/news/20180412/chiropractor-faces-new-charges-as-more-women-allege-sexual-contact, (last visited July 30, 2018).

[5] A copy of the Complaint in the third underlying case is attached as Exhibit C.

Rather than intervene in the *Jane Doe*, *Horner*, or *Duncan* cases in state court, NCMIC chose to file a separate declaratory judgment action in this court, thereby creating parallel, duplicative litigation with the strong potential for conflicting judgments and other unnecessary legal and procedural convolutions.

### B. Jane Doe's Second Amended Complaint

Doe has requested leave of Court in the Franklin County case to file a Second Amended Complaint adding NCMIC as a Defendant, along with Nationwide Mutual Insurance Company and Nationwide Property and Casualty Insurance Company ("Nationwide").[6] Doe's Second Amended Complaint notes that NCMIC insured Smith under a professional liability insurance policy, and that Nationwide insured Smith under a homeowners insurance policy, and seeks a declaratory judgment that both are obligated, under their respective policies, to indemnify Smith for the damages Jane Doe is seeking in the Franklin County case.

### C. Legal and Factual Issues in this Case

While the instant federal case is premised upon 28 USC § 2201, the questions it poses are all unsettled issues of Ohio law. NCMIC contends that it is not required to defend or indemnify Smith in either underlying case due to policy exclusions for, inter alia, sexual assault and intentional injuries. Jane Doe vehemently disputes NCMIC's contention that it is not required to indemnify Smith based on its myopic interpretation of the policy and misleading citation and selective omission of select facts and allegations in her underlying suit against Smith.

In addition to the application of Ohio law, extensive understanding of the facts in the underlying cases would be necessary in order to resolve the question of the whether or not coverage is due. As acknowledged in NCMIC's Complaint, coverage under the policy extends to claims for

---

[6] Doe also seeks to add NCMIC Insurance Services, the NCMIC entity that appears to be authorized by the Ohio Department of Insurance to conduct business in Ohio.

"bodily injury, sickness, disease or death" arising out of negligent omissions, acts and errors arising out of "professional services," which in turn is defined to mean "services which are within the scope of practice of a chiropractor." Id.

In addition, and in the alternative to their intentional tort theories, both Doe and Horner allege that Smith was *negligent* in touching them and in failing to disclose to them the material risks and dangers inherent in the procedures he proposed to perform (i.e., failure to provide informed consent). Jane Doe further sets forth a claim for negligent invasion of privacy under Ohio common law. Additionally, these cases against Smith are unique in that even if the alleged improper touching is proven to be intentional (which Smith denies), it not only occurred within the course and scope of his treatment of Doe and Horner, but was inextricably related to the medical procedures he performed on them; all of the touching occurred while he was performing specific chiropractic procedures, by virtue of the position their bodies had to be in for those procedures to be performed. This makes it an issue of first impression under Ohio law, particularly because the applicable law must be applied to NCMIC's individual insurance contract.

A survey of the rather scant case law on the applicability of professional liability insurance policies to cases where physicians have engaged in sexual conduct with patients reveals that there is no Ohio case where the inappropriate sexual contact was related to or necessary for the actual medical service the physician was providing. *See, e.g.*, *Nye v. Ellis*, 5th Dist. Licking No. 09-CA-0080, 2010-Ohio-1462 (no coverage for lawsuit alleging consensual sexual relationship between chiropractor and patient, where the sexual activity occurred outside of the treatment setting). Of note, the Court in *Nye* left open the possibility that a consensual sexual relationship between chiropractor and patient could constitute malpractice if an expert were to testify that such a

relationship deviates from the standard of care, such testimony not having been presented in that case. Id., at ¶ 35.

## II.    LAW & ARGUMENT

### A.  Standard for Abstention in a Declaratory Judgment Action

Federal courts are not obligated to allow for federal jurisdiction in a declaratory judgment action. The Declaratory Judgment Act provides that a district court "*may* declare the rights and other legal relations of any interested party seeking such declaration...." 28 U.S.C. § 2201(a) (emphasis added). This language affords the district court "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n,* 481 F.3d 414, 421 (6th Cir.2007) (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)).

Following the United States Supreme Court's decision in *Wilton*, the Sixth Circuit has enumerated five factors that must be considered when determining whether to exercise jurisdiction in a declaratory judgment action:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5) whether there is an alternative remedy which is better or more effective.

*Travelers*, 495 F.3d at 271 (6th Cir.2007) (citing *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir.1984)). Three additional sub-factors must, in turn, be considered to

determine whether a declaratory action would increase friction between federal and state courts

(the fourth factor):

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir.2000) (citing *Wilton*, 515 U.S. at 277, 115 S.Ct. 2137).

**B. The Relevant Factors Weigh Overwhelmingly Against Federal Jurisdiction**

> **i. Whether the declaratory action would settle the controversy, and whether it would serve a useful purpose in clarifying the legal relations in issue**

This case would not settle the controversy between the parties. First, even if it settled the controversy between NCMIC and Smith (or between NCMIC and Doe), it would not settle the underlying controversy between Doe (or Horner) and Smith because it would not determine Doe's and Horner's legal claims against Smith. Those claims would remain pending in state court. *See Travelers*, 495 F.3d at 272 ("[A]lthough a declaratory judgment would 'clarify the legal relationship between [the insurer and the insured] pursuant to the insurance contracts, the judgment would not clarify the legal relationship between [the parties] in the underlying state action.'") (citing *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.,* 373 F.3d 807, 814 (6th Cir.2004)).

In this case, there is the added complication that NCMIC will be a party in the *Jane Doe* case in state court (in addition to Nationwide, and the other NCMIC entities, which are not parties to this case). Thus, regardless of any utility in clarifying a small fraction of the "legal relations at issue," allowing this action to proceed would not even settle the underlying controversy between

Doe and NCMIC (or the potential controversy between Doe, NCMIC, the second NCMIC entity, and Nationwide). *See Travelers*, 495 F.3d at 272. Also unique to this case is the fact that the additional Jane Does on whose behalf Doe brings suit have not been identified, and it is not yet clear whether the Franklin County court will certify the matter as a class action, or whether any potential class members will seek to opt out, in which case they would not be bound by the District Court's ultimate decision in this declaratory judgment action. Id. ("Significantly, parties who may be potentially affected by the judgment…were not joined in the federal district court action and are not parties now. As non-parties, [they] are not bound by the entry of a declaratory judgment.") As such, the first two factors weigh heavily against federal jurisdiction. Likewise, great complications may well result from the fact that Duncan, who makes the same legal and factual allegations, is not a party to this case, so the declaration would not apply to her.

### ii. Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"

The court in *Travelers* found this factor to be neutral. In this case, however, an exercise of concurrent federal jurisdiction would constitute "gratuitous interference with the orderly and comprehensive disposition of [the] state court litigation." *See Grand Trunk,* 746 F.2d at 326 (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)). NCMIC is essentially forum shopping. Rather than intervene in the cases already filed in state court, NCMIC has sought to achieve complete diversity in this action by suing Doe, Horner, and Smith, all of whom are residents of this District. In doing so, NCMIC has initiated unnecessary, duplicative proceedings in two different courts, increasing the burden on both the parties and the courts. Furthermore, it creates a "rush to judgment" since the insurance coverage issue is now being litigated in the state court as well, a factor not present in *Travelers*. As such, the third factor weighs against federal jurisdiction.

### iii.   Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction

As in the highly analogous *Travelers* case, this factor militates heavily against federal jurisdiction. In *Travelers*, the Sixth District held that "because Kentucky law is controlling, we conclude that Kentucky courts are in the better position to apply and interpret its law on these issues." *Travelers*, 495 F.3d at 272. In reaching its decision to overturn the district court's decision to exercise federal jurisdiction as an abuse of discretion, the court engaged in the following analysis:

> **First, the issue raised—whether any negligence on the part of Bowling Green in allowing Wampler to leave the facility and drive his car was part of its medical treatment of Wampler, and is therefore "medical" negligence, or whether such action was a separate act of ordinary negligence—involves purely questions of Kentucky law. Negligence questions are largely reserved to the states**. Here, it appears that the issue has not been squarely resolved under Kentucky law. The district court relied on the case of *Ratliff v. The Employers' Liab. Assur. Corp.,* 515 S.W.2d 225 (Ky.1974), to hold that "[t]he alleged negligent act of permitting Wampler to leave the facility after treatment was not independent and mutually exclusive of the administration of the methadone, but was instead related to [Bowling Green's] medical treatment of Wampler." However, in *Ratliff,* Kentucky's highest court (at the time, the Court of Appeals was Kentucky's highest court) determined that the general liability insurer was not responsible for a judgment for personal injury suffered by a man who fell while treating as an *in-patient* at a hospital. The court concluded that the hospital's nurses were required to exercise their "expert professional ability" in determining whether Ratliff was capable of returning safely from the nurse's station to his bed. *Ratliff,* 515 S.W.2d at 230. Significant differences exist between a fall by a patient confined to the continuing care of hospital staff and one who causes injury to another in a distant location after receiving treatment and leaving the medical facility.

Id., at 272-273 (bold emphasis added). The court further held that "issues of insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve," observing that " '[s]tates regulate insurance companies for

the protection of their residents, and state courts are best situated to identify and enforce the public

policies that form the foundation of such regulation.' " Id., at 273, citing *Bituminous,* 373 F.3d at

815. The court further noted that "[t]his concern has been frequently applied in cases of insurance

contract interpretation." Citing to *Bituminous* and six other Sixth Circuit cases, the court ultimately

decreed that "a district court should stay or dismiss complaints filed by insurance companies

seeking a declaratory judgment as to their underlying state court lawsuits." NCMIC's Complaint

falls squarely into this category. The Sixth Circuit could not have been any more clear that federal

court jurisdiction should be denied.

As in *Travelers*, a court will ultimately have to decide the unsettled Ohio law issue of

whether Smith's acts and omissions constituted medical treatment and medical negligence. Ohio

state courts have both a greater interest in resolving this question of insurance contract

interpretation and are in a better position to do so.

The three additional factors identified in *Scottsdale* and applied as subsections of the fourth

factor also weigh in favor of dismissal of the federal court action. *See Bituminous,* 373 F.3d at 814.

A detailed understanding of the underlying factual issues in the state court litigation will

undoubtedly be crucial in establishing whether Smith's acts and omissions constituted medical

treatment under NCMIC's insurance policy, whether they constitute medical malpractice, etc. As

in *Travelers*, the "close nexus" between the underlying factual issues and state law and public

policy favors a decision by the state court instead of the federal court. *See Travelers*, 495 F.3d at

273. "This is not a case where federal law will come into play, and, therefore, a state court forum

is preferable." Id. Without question, the fourth factor weighs heavily in favor of abstention.

**iv.** **Whether there is an alternative remedy which is better or more effective**

Here, an alternative remedy exists because Ohio has its own Declaratory Judgment Act. See RC 2721.01 *et seq.*; *Travelers*, 495 F.3d at 273 (holding that Kentucky's Declaratory Judgment Act provided an alternative to federal court jurisdiction). In fact, in the *Doe* case, Doe is seeking a declaratory judgment that NCMIC is required to indemnify Smith. Furthermore, NCMIC could intervene in the state court litigation, or could file an indemnity action at the conclusion of the state court litigation. Id. As such, the fifth factor weighs in favor of abstention as well.

**C. The Court Should Dismiss or Stay this Action**

Analysis of each of the relevant factors makes it abundantly clear that federal court jurisdiction over NCMIC's declaratory judgment action would be improper. Given the policies favoring abstention, the inherent risks of having parallel state and federal cases in which identical relief is sought proceeding at the same time, and the Sixth Circuit case law favoring abstention in this very scenario, this case presents a textbook case for abstention.

**III.    CONCLUSION**

For the reasons explained above, this Court should dismiss Plaintiff's Complaint. Because the relevant factors overwhelmingly disfavor federal jurisdiction, and because the applicability of Smith's insurance policy will be litigated in the underlying state court litigation, dismissal, as opposed to a stay of the proceedings, is the proper remedy. Alternatively, the Court should stay the proceedings until the conclusion of the state court litigation.

Respectfully submitted,

*/s/ Alexander J. Durst*_____
Alexander J. Durst                    0089819
Attorney for Defendant Jane Doe
The Durst Law Firm
810 Sycamore St., 2nd Floor
Cincinnati, OH 45202
Tel: (513) 621-4999
Fax: (513) 621-0200
Email: alex@durstlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2018, I electronically filed the foregoing with the Clerk of Court using the Electronic Filing System, which will send notification of such filing to all counsel of record.

*/s/ Alexander J. Durst*_____
Alexander J. Durst                    0089819