# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

NCMIC INSURANCE CO.,

      **Plaintiff,**

v.

                      **Civil Action 2:18-cv-533**
                      **CHIEF JUDGE EDMUND A. SARGUS, JR.**
                      **Magistrate Judge Chelsey M. Vascura**

RYAN D. SMITH, D.C., *et al.,*

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Jane Doe's ("Defendant Doe") Motion to Dismiss (ECF No. 8); Plaintiff NCMIC Insurance Company's ("Plaintiff") Memorandum in Opposition (ECF No. 9); Defendant Doe's Reply Brief (ECF No. 13); Plaintiff's Motion for Leave to File Sur-reply (ECF No. 14); Plaintiff's Amended Motion for Leave to File Sur-reply (ECF No. 15); Defendant Doe's Motion to Strike or Memorandum in Opposition to Plaintiff's Motion for Leave to File Sur-reply (ECF No. 17); Plaintiff's Motion to Strike Alexander J. Durst's Affidavit in Support of Defendant Doe's Motion to Dismiss (ECF No. 33); Defendant Doe's Memorandum in Opposition to Plaintiff's Motion to Strike the Affidavit (ECF No. 37); and Plaintiff's Reply (ECF No. 39).

For the reasons that follow, Plaintiff's Amended Motion for Leave to File Sur-reply is **GRANTED** (ECF No. 15); Plaintiff's Motion for Leave to File Sur-reply is **DISMISSED AS MOOT** (ECF No. 14); Defendant Doe's Motion to Strike Plaintiff's Sur-reply is **DENIED** (ECF No. 17), Defendants' Motion to Dismiss or Stay Proceedings is **DENIED** (ECF No. 8), and

Plaintiff's Motion to Strike Alexander J. Durst's Affidavit in Support of Defendant Doe's Motion to Dismiss is **DISMISSED AS MOOT** (ECF No. 33).

I.

## A. Factual Background

Plaintiff is an Iowa insurance corporation, with its principal place of business in Clive, Iowa. (Pl.'s Compl. ¶ 2, ECF No. 1). From 2001 to 2018, Plaintiff issued a series of professional liability insurance policies to Defendant Ryan D. Smith ("Defendant Smith"). (*Id.* ¶ 4). Defendant Smith is a resident of Delaware County, Ohio, with a chiropractic practice located in Franklin County, Ohio. (*Id.* ¶ 5). Defendant Smith formed Synergy Clinic, a for-profit limited liability company registered in Ohio, for the purpose of running his chiropractic business. (*Id.* ¶ 6). At the time the relevant facts arose, Defendant Smith was covered by Plaintiff's Professional Liability Insurance Policy ("the Policy"), number MP00923418, for a policy period from October 3, 2016 to October 3, 2017. (*Id.* ¶ 33).

The present case arises from two underlying actions. Defendant Doe, a named plaintiff and representative party in *Jane Doe, et al. v. Smith, et al.*, 18-CV-003487 ("Doe Lawsuit") is an Ohio resident and a former patient of Defendant Smith. (*Id.* ¶ 8). On April 25, 2018, Defendant Doe, on behalf of herself and others, filed suit against Defendant Smith alleging assault, battery, and sexual misconduct. (*Id.* ¶ 14; Exhibit B). On May 7, 2018, Defendant Doe filed an Amended Class Action Complaint in the Doe Lawsuit to add Synergy Clinic as a named defendant. (*Id.* ¶ 15; Exhibit C).

In her Amended Complaint, Defendant Doe alleged that Defendant Smith "engaged in a pattern of deplorable and illegal behavior towards [Jane Doe] and over 40 other female patients" and "sexually assaulted patients." (*Id.* ¶ 16) (citing Exhibit C). Specifically, Defendant Doe

2

claimed that at treatment sessions between May 2017 and June 2017, Defendant Smith touched her breasts and "positioned [her] hand behind her back at waist level . . . and holding [her] arm firmly in place, pressed his genitals into [her] hands." (*Id.* ¶ 18) (citing Exhibit C). Defendant further claimed that Defendant Smith once required her to wear a medical gown so that he could "manipulate the gown to expose both of her breasts." (*Id.*) (citing Exhibit C).

Defendant Doe asserted that "[a]s a result of 47 women coming forward as of April 12, 2018, Smith has (as of that same date) been criminally charged with 66 counts of gross sexual imposition." (*Id.* ¶ 20) (citing Exhibit C). The putative class members brought the following allegations against Defendant Smith: (1) assault, (2) battery, (3) medical negligence/chiropractic malpractice, (4) failure to obtain informed consent, (5) negligent invasion of privacy, (6) false imprisonment, and (7) intentional infliction of emotional distress. (Exhibit C).

Defendant Susanne Horner ("Defendant Horner"), a named plaintiff in *Susanne Horner v. Ryan D. Smith, D.C., et al.*, 18-CV-003645 ("Horner Lawsuit"), is also an Ohio citizen and a former patient of Defendant Smith. (*Id.* ¶ 7). On May 1, 2018, Defendant Horner filed suit against Defendant Smith and Synergy Clinic. (Pl.'s Compl. ¶ 25) (citing Exhibit D). Defendant Horner alleged that in May 2017, Smith touched the "pectoralis muscle of [her] left breast in a way that made [her] feel uncomfortable" and "guided [her] hand behind her back and placed his penis in her hand." (*Id.* ¶ 26) (citing Exhibit D). Defendant Horner asserted the following counts in her complaint: (1) assault, (2) battery, (3) negligence, (4) failure to obtain informed consent, and (5) intentional infliction of emotional distress. (Exhibit D).

## B. Procedural History

Plaintiff filed the instant action on May 31, 2018, seeking a declaratory judgment that it has no duty to defend, indemnify, or otherwise offer liability coverage to Defendant Smith or

Synergy Clinic in connection with any claims asserted in the Doe and Horner Lawsuits. (Pl.'s Compl. ¶ A–H). On July 31, 2018, Defendant Doe filed a Motion to Dismiss Plaintiff's Complaint, or alternatively, a Motion to Stay Proceedings pending the conclusion of the underlying state court litigation. (ECF No. 8). On August 20, 2018, Plaintiff filed its Response in Opposition. (ECF No. 9). On September 17, 2018, Defendant Doe filed her Reply brief. (ECF No. 13). Three days later, on September 20, 2018, Plaintiff filed a Motion for Leave to File Sur-Reply. (ECF No. 14). On October 11, 2018, Defendant Doe responded with a Motion to Strike, or alternatively, a Memorandum in Opposition to Plaintiff's Motion for Leave to File Sur-Reply. (ECF No. 17).

That same day, the Court ordered Plaintiff to show cause within fourteen days why it should not dismiss this action against Synergy Chiropractic without prejudice for failure to effect service. (ECF No. 16). Plaintiff moved for default judgment against Defendant Smith on October 18, 2018. (ECF No. 19). On October 22, 2018, the Magistrate Judge issued a Report and Recommendation recommending that: (1) Plaintiff's Motion for Default Judgment be denied without prejudice, and (2) Plaintiff's claims against Synergy Chiropractic be dismissed without prejudice pursuant to Rule 4(m). (ECF No. 20).

On November 13, 2018, Defendant Doe filed a Supplemental Affidavit of Alexander J. Durst in support of her Motion to Dismiss or Stay Proceedings. (ECF No. 31). Plaintiff filed a Motion to Strike the Supplemental Affidavit on November 27, 2018. (ECF No. 33). One day later, the Court adopted the Magistrate Judge's Report and Recommendations (ECF No. 20), denying Plaintiff's Motion for Default Judgement without prejudice and dismissing Plaintiff's claims against Synergy Chiropractic without prejudice. (ECF No. 34). On December 27, 2018, Defendant Doe filed a Response to Plaintiff's Motion to Strike. (ECF No. 37). Plaintiff filed a

Reply brief in support of its Motion to Strike on January 2, 2019. (ECF No. 39). All motions are ripe for review.

## II.

### A. Legal Standard to File Sur-reply

Although Plaintiff has no automatic right to file sur-reply, additional memoranda are sometimes considered. Local Civil Rule 7.2(a) states that only supporting, opposing, and reply memoranda can be filed, "except upon leave of court for good cause shown." *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 207-CV-1190, 2010 WL 4117552, at *4 (S.D. Ohio Oct. 19, 2010) (quoting S. D. Ohio Civ. R. 7.2(a)). Generally, "good cause" exists where the reply brief raises new grounds that were not included in movant's initial motion." *Id.* (citing as examples *Power Marketing Direct v. Moy*, 2008 WL 4849289 (S.D. Ohio Nov. 6, 2008) and *White v. Honda of America Mfg., Inc.*, 191 F.Supp.2d 933, 944 (S.D. Ohio 2002) (holding that the mere fact a sur-reply might be "helpful" is not enough to justify its filing)). Good cause for a sur-reply also exists where a party seeks to "clarify misstatements" contained in the reply brief. *Guyton v. Exact Software N. Am.*, 2015 WL 9268447, at *4 (S.D. Ohio Dec. 21, 2015).

### B. Analysis of Plaintiff's Motion for Leave to File Sur-reply

Relying on *Guyton*, Plaintiff argues that a sur-reply is warranted because Defendant Doe "misrepresents the current status of the state court litigation between her, Defendant [Smith], and [Plaintiff]." (Pl.'s Mot. for Sur-reply at 2, ECF No. 14). Specifically, Plaintiff suggests that although the "Franklin County Court of Common Pleas granted [Defendant] Doe's motion to amend her complaint (in a seemingly perfunctory manner), [Plaintiff] has not yet had any opportunity to move to dismiss [Defendant] Doe's newly-added claims against it." (Pl.'s Amended Mot. for Sur-reply at 2–3, ECF No. 15-1). Thus, Plaintiff argues it is not yet a

5

participant in the litigation. Defendant Doe moves to strike Plaintiff's Sur-reply, arguing that Plaintiff "not only fails to establish good cause for the allowance of a sur-reply brief, but strongly misconstrues [Defendant] Doe's reply brief." (Def.'s Mot. to Strike Sur-reply at 1, ECF No. 17). In Defendant Doe's view, she "never stated or in any way implied that NCMIC had been served or participated in the state case." (*Id.* at 4).

The Court declines to conclude whether Defendant Doe's characterization of the state court litigation contained misstatements. Instead, the Court notes that "in this circuit, there is 'a strong preference that claims be adjudicated on the merits.'" *National City Bank v. Aronson*, 474 F. Supp. 2d 925, 930 (S.D. Ohio 2007) (citing *Coleman v. Shoney's, Inc.*, 79 Fed. Appx. 155, 157 (6th Cir. 2003)). Accordingly, this Court has granted leave to file sur-reply in the absence of good cause where the non-moving party "will suffer no prejudice by the filing of the sur-reply." *Id. See also Burt v. Life Insurance Co. of North America*, 2006 U.S. Dist. LEXIS 54630, at *9 (S.D. Ohio Aug. 7, 2006) (permitting a sur-reply without good cause shown where "allowing Defendant to file its Sur-Reply results in no prejudice toward Plaintiff").

In the case at bar, Plaintiff's Sur-reply will not prejudice Defendant. Although Defendant contends that permitting additional briefing will raise attorneys' fees and cause undue delay, Plaintiff has already filed its proposed Sur-reply. (ECF No. 15-1). No additional delay is necessary. As the tendered Sur-reply addresses the merits of this Court's jurisdiction, the Court will consider it. Consequently, the Court **GRANTS** Plaintiff's Amended Motion for Leave to File Sur-reply. (ECF No. 15-1). Defendant Doe's Motion to Strike Plaintiff's Sur-reply is **DENIED** (ECF No. 17), and Plaintiff's Motion for Leave to File Sur-reply is **DISMISSED AS MOOT** (ECF No. 14).

## III.

### A. Legal Standard for Rule 12(b)(1) Motion

Rule 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction. Without subject matter jurisdiction, a federal court lacks authority to hear a case. *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990). Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack under Rule 12(b)(1) "questions merely the sufficiency of the pleading," and the trial court therefore takes the allegations of the complaint as true. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016).

A factual attack is a challenge to the factual existence of subject matter jurisdiction. No presumptive truthfulness applies to the factual allegation. *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). When examining a factual attack under Rule 12(b)(1), "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Id.* (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)). The plaintiff has the burden of establishing jurisdiction in order to survive the motion to dismiss. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004); *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

### B. Analysis of Defendant's 12(b)(1) Motion

The central issue at this time is whether the Court has subject matter jurisdiction over Plaintiff's declaratory judgment claim. Defendant Doe argues the Court should dismiss the case because there are no "claims or issues of federal law in either this declaratory judgment action or

the underlying state law litigation." (Def.'s Mot. to Dismiss at 2, ECF No. 8).[1] As Defendant Doe points out, Defendant Doe and Defendant Horner's negligence, malpractice, and intentional tort claims are governed exclusively by Ohio law. (*Id.* at 4). Defendant Doe further claims the "insurance coverage question is already being litigated in one of the state cases." (*Id.* at 2). Moreover, in Defendant Doe's view, the present suit is a waste of judicial resources because this Court would need "extensive understanding of the facts in the underlying cases . . . in order to resolve the question of [whether] or not coverage is due." (*Id.* at 5). Accordingly, Defendant Doe asserts that this Court should decline subject matter jurisdiction pursuant to the Declaratory Judgment Act. (28 U.S.C. § 2201(a)).

Plaintiff contends the Court has subject matter jurisdiction to hear the case, and further argues it "*should* exercise that jurisdiction." (Pl.'s Opp'n at 1, ECF No. 9). First, Plaintiff claims that Defendant Doe's characterization of ongoing state litigation is misleading. (*Id.* at 4). Specifically, Plaintiff points out that it has not been served or formally named a defendant in any of the state court actions against Defendant Smith. (*Id.*).[2] Second, Plaintiff states that it moved for declaratory judgment in federal court to seek a "single judicially-economic proceeding, given the multiple, still forming state court actions against Smith, to determine the rights between NCMIC and Smith under his Policy." (*Id.* at 5). Finally, Plaintiff suggests that the existence of diversity jurisdiction under 28 U.S.C. § 1332 renders federal jurisdiction proper. (*Id.*).

---

[1] All references to page numbers in the parties' motions refer to those numbers generated by the Court's electronic filing system.

[2] Plaintiff acknowledges that Defendant Doe named NCMIC as a defendant in her Second Amended Complaint. (Exhibit A, ECF No. 8-1). At the time Plaintiff filed its Response in Opposition, Defendant Doe's Motion to Amend the Complaint had not been ruled upon. However, the Franklin County Court of Common Pleas granted Plaintiff's Motion on August 31, 2018. (Def.'s Reply, Exhibit A, ECF No. 13). Accordingly, NCMIC is now a party in the underlying state court litigation.

The Declaratory Judgment Act provides, in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

As Defendant Doe correctly states, federal courts are not obligated to exercise subject matter jurisdiction in declaratory judgment actions. *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 494 (1942) ("[a]though the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act . . . it was under no compulsion to exercise that jurisdiction"). Rather, the Declaratory Judgment Act permits the Court to exercise subject matter jurisdiction where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune Inc. v. Genetech, Inc.*, 549 U.S. 118 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

The statute affords the district court "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Adrian Energy Associates v. Michigan Public Service Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)). In considering whether a district court should exercise jurisdiction in a declaratory judgment action, the Sixth Circuit has enumerated five balancing factors:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

9

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Travelers Indemnification Co. v. Bowling Green Processional Assoc., PLC*, 495 F.3d 266, 2 (6th Cir. 2007) (citing *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984).

The Court must consider three additional sub-factors when analyzing the fourth factor, whether a declaratory action would increase friction between the federal and state courts:

(1) whether the underlying factual issues are important to an informed resolution of the case;

(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Insurance Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000) (citing Wilton, 515 U.S. at 277)). The Court will analyze each factor in turn.

## 1. Would Declaratory Action Settle the Controversy?

Defendant Doe maintains that this action would not settle the controversy between the parties. (Def.'s Mot. to Dismiss at 8). According to Defendant Doe, the present litigation can only resolve the controversy between Plaintiff and Defendant Doe—not the underlying controversy between Defendants Doe, Horner, and Smith. (*Id.*). Moreover, Defendant Doe identifies several potential wrinkles in resolving the case in this Court. First, Plaintiff is now a party in the Doe Lawsuit, creating the potential for duplicative or inconsistent rulings. (Pl.'s

Reply at 13). Second, Defendant Doe suggests "it is not yet clear whether the Franklin County court will certify the matter as a class action, or whether any potential class members will seek to opt out." (*Id.*). If the Court issues a declaratory judgment in the instant action, these non-parties are "not bound by the entry of a declaratory judgment" regardless of whether they become parties later. *Travelers*, 495 F.3d at 272. Finally, Defendant Doe suggests that Plaintiff waived its right to object to a declaratory judgment in state court by naming her as a defendant in the instant action. (Def.'s Reply at 3).

Plaintiff contends that a declaratory judgment would settle "all controversy between [itself] and [Defendant] Smith, the relevant parties to this current action." (Pl.'s Opp'n at 8). Plaintiff cites *Scottsdale Insurance Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008), where a plaintiff sued a therapy clinic and a therapist for tort claims related to her sexual affair with the therapist. Scottsdale, the insurer of the therapy clinic, sought a declaratory judgment that it had no duty to extend liability coverage to the therapist. *Id.* at 550–551. When considering the first balancing factor, the Sixth Circuit concluded that a declaratory judgment would settle the controversy between the parties. *Id.* at 556. Because Scottsdale was not a party in the state court action, the extent of its insurance coverage could not be considered in that action. *Id.* Therefore, the district court properly resolved the narrow issue between Scottsdale and the therapist regarding the scope of the insurance policy. *Id.*

Analogizing *Flowers* to the present case, Plaintiff argues that a declaratory judgment would end the narrow insurance coverage dispute—a separate issue from the tort claims against Defendant Smith. (Pl.'s Opp'n at 8). Moreover, Plaintiff contends that, like in *Flowers*, the insurance coverage question cannot be considered in state court. Specifically, Plaintiff maintains that its party or non-party status in state court bears little relevance in the present controversy

11

because O.R.C. § 2721.02(B) bars a declaratory judgment in state court. (Pl.'s Sur-reply at 2,

ECF No. 15-1). O.R.C. § 2721.02(B) provides, in relevant part:

> [A] plaintiff who is not an insured under a particular policy of liability insurance
> may not commence against the insurer that issued the policy an action . . . that
> seeks declaratory judgment or decree as to whether the policy's coverage
> provisions extended to an injury, . . . until a court of record enters in a distinct
> civil action for damages between the plaintiff and that insured as a tortfeasor a
> final judgment awarding the plaintiff damages for the injury, death, or loss to
> person or property involved.

O.R.C. § 2721.02(B). Thus, Plaintiff asserts that, "under the *plain language* of the statute,"

Defendant Doe cannot attain a declaratory judgment in the Franklin County Court of Common

Pleas until or unless a final judgment is entered against Defendant Smith. (Pl.'s Sur-reply at 2)

(emphasis in original). As a result, Plaintiff claims it "intends to promptly move to dismiss

[Defendant] Doe's claims against it" in state court. (*Id.*).

Additionally, Plaintiff distinguishes the present case from *Bituminous Gas Corp. v. J&L

Lumber Co., Inc.*, 373 F.3d 807, 814 (6th Cir. 2004), where the Sixth Circuit found the first

balancing factor weighed against discretionary subject matter jurisdiction. Because the plaintiff

in the underlying state court action was not a party to the declaratory judgment action, "any

judgment in federal court would not be binding as to him and could not be res judicata in a tort

action." *Id.* The Sixth Circuit held that a declaratory judgment would not resolve the insurance

coverage controversy. *Id.* Here, Plaintiff points out that the plaintiffs in the underlying state

court action (i.e., Defendants Doe and Horner) are parties in the instant litigation. (*Id.*). Thus,

any declaratory judgment in federal court would be binding on them. (*Id.*). Accordingly,

Plaintiff argues this Court can fully settle the insurance coverage controversy without

undermining any ongoing state court litigation. (*Id.*).

On balance, the parties' positions reflect a close case. As indicated by the Sixth Circuit in *Flowers*, a "declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action. *Flowers*, 513 F.3d at 555 (emphasis added) (*see also, Northland Insurance Co. v. Stewart Title Guar. Co.*, 372 F.3d 448, 454 (6th Cir. 2003) ("while the declaratory judgment would not end the dispute between Cailu and Stewart, it would settle the controversy regarding the scope of insurance coverage issued by Northland to Cailu, and whether Northland had a duty to defend the insureds")).

Here, the insurance coverage dispute will potentially be addressed in state court. In Count Nine of her Second Amended Class Action Complaint (i.e., Doe Lawsuit), Defendant Doe seeks a declaratory judgment that Plaintiff must indemnify Defendant Smith pursuant to Ohio's Declaratory Judgments Act. (Def.'s Mot. to Dismiss, Exhibit A ¶ 78–84). However, the insurance coverage question is not presently being addressed in state court. Plaintiff correctly notes that O.R.C. § 2721.02(B) bars the state court from issuing a declaratory judgment until or unless liability is found against Defendant Smith. (Pl.'s Sur-reply at 2). In addition, Plaintiff accurately states that O.R.C. § 2721.02(B) contains no provision which waive a party's "right to object" to a declaratory judgment in state court. (*Id.* at 3).

Accordingly, the first *Grand Trunk* factor favors Plaintiff's position. Plaintiff is a party to the state court action, yet O.R.C. § 2721.02(B) precludes the state court from addressing the insurance coverage controversy. Defendants Doe and Horner must obtain a state court judgment against Defendant Smith for the underlying tort claims before seeking a state court declaratory judgment regarding his insurance policy. Consequently, a federal judgment would settle the controversy, and the first factor supports federal subject matter jurisdiction.

## 2. Would Declaratory Action Clarify the Legal Relations at Issue?

Defendant Doe argues that "regardless of any utility in clarifying a small fraction of the 'legal relations at issue,'" proceeding with the instant action would only complicate the parties' interrelated disputes. (Def.'s Mot. to Dismiss at 8). For instance, Defendant Doe points out that "it is not yet clear whether the Franklin County court will certify the [underlying state court] matter as a class action." (*Id.* at 9). Moreover, Defendant Doe states that additional Jane Does will likely be identified in the future, making it difficult to clarify legal relations at this stage in the litigation. (*Id.*).

Defendant Doe cites *Travelers*, 495 F.3d at 272, in support of her position. In *Travelers*, a commercial liability company sought a declaratory judgment that it had no duty to defend or indemnify an insured treatment clinic in connection with the death of a patient. *Id.* When analyzing the second declaratory judgment factor, the Sixth Circuit held that "although a declaratory judgment would 'clarify the legal relationship between [the insurer and the insured] pursuant to the insurance contracts, the judgment would not clarify the legal relationship between [the parties] in the underlying state action.'" *Id.* (citing *Bituminous Gas Corp. v. J&L Lumber Co., Inc.*, 373 F.3d 807, 814 (6th Cir. 2004)).

Plaintiff asserts that a declaratory judgment would resolve all legal relations at issue. (Pl.'s Opp'n at 9). According to Plaintiff, "the only legal relations at issue are those between [Plaintiff] and [Defendant] Smith." (*Id.*). Plaintiff further contends that "[Defendant] Smith's liability to [Defendant] Doe, or any other accuser of [Defendant] Smith's who has filed in state court, are simply not at issue here." (*Id.*). Rather, Plaintiff argues the present suit merely involves the determination of any contractual duties owed by Plaintiff to Defendant Smith.

The Sixth Circuit has held "[t]he second factor in the *Grand Trunk* analysis is closely related to the first factor and is often considered in connection with it." *Flowers*, 513 F.3d at 556 (citing *Travelers*, 495 F.3d at 271–272). "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id.* at 557 (citing *Bituminous*, 373 F.3d at 814). However, the *Flowers* court noted there are two lines of precedent "concerning whether the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Id.*

In *West American Insurance Co. v. Prewitt*, 208 Fed. Appx. 393, 397 (6th Cir. 2006), the Sixth Circuit held that "declaratory relief was a proper remedy in cases where the declaratory action would clarify *only* the legal relationship between the insured and the insurer, and would not clarify the legal relationships in the state action." (emphasis in original) (*see also State Farm Fire and Casualty Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986); *Northland*, 327 F.3d at 454; *Allstate Insurance Co. v. Green*, 825 F.2d 1061 (6th Cir. 1987)). Yet, as Defendant Doe asserts, the Sixth Circuit took the opposite position in *Travelers*, holding that a declaratory judgment must clarify the legal relationships between the parties in both the federal and state actions. *Travelers*, 495 F.3d at 272 (*see also Bituminous*, 373 F.3d at 814; *U.S. Fire Insurance Co. v. Albex Aluminum, Inc.*, 161 Fed. Appx. 562, 565 (6th Cir. 2006)).

In *Flowers*, the Sixth Circuit found "the former line of precedent to be more persuasive than the latter." *Flowers*, 513 F.3d at 557 (adopting *Prewitt*). Therefore, Plaintiff's position is well taken. The declaratory action need only clarify the legal relationship between the insured and the insurer to satisfy the second balancing factor. Here, as in *Flowers*, a federal declaratory

15

judgment would clarify the indemnification duties owed by Plaintiff to Defendant Smith. Accordingly, the second *Grand Trunk* factor weighs in favor of exercising jurisdiction.

### 3. Would Declaratory Action Permit "Procedural Fencing?"

Defendant Doe suggests that exercising federal jurisdiction would constitute "'gratuitous interference with the orderly and comprehensive disposition'" of the underlying state court litigation. (Def.'s Mot. to Dismiss at 9) (citing *Grand Trunk*, 746 F.2d at 326). In Defendant Doe's view, Plaintiff's decision to bring a new action in federal court—rather than intervene in the existing state court actions—amounts to forum shopping. (*Id.*). Moreover, Defendant Doe points out that Plaintiff's actions create an unnecessary "rush to judgment" because the insurance coverage issue could be decided in state court. (*Id.*). Consequently, Defendant Doe avers the third balancing factor weighs against federal subject matter jurisdiction.

Plaintiff contends it filed the instant action in federal court to "achieve a quick and economic resolution of its legal relations with [Defendant] Smith." (Pl.'s Opp'n at 10). Plaintiff cites *Flowers*, 513 F.3d at 559, in which the Sixth Circuit noted: "[w]e are reluctant to impute an improper motive to a plaintiff where there is no evidence of such a record." In addition, Plaintiff argues the exercise of jurisdiction would not create a "rush to judgment" because it did not initiate duplicative proceedings in two different courts. Rather, Plaintiff asserts that Defendant Doe attempted to "institute duplicative proceedings" by amending her state court complaint to add Plaintiff while simultaneously filing this Motion to Dismiss. (Pl.'s Opp'n at 10).

The third balancing factor precludes jurisdiction for "declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum. *Flowers*, 513 F.3d at 558 (citing *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004). Where a plaintiff "has filed his claim

after the state court litigation has begun, we have generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of [the] action.'" *Id.* (citing *Bituminous*, 373 F.3d at 814). However, in *U.S. Fire*, the Sixth Circuit noted that district courts should not "seize litigations from state courts merely because one party, normally a defendant, goes to federal court to begin his . . . defense before the state court begins the case under state law." *U.S. Fire*, 161 Fed. Appx. at 565 (citing *AmSouth Bank*, 386 F.3d at 775).

In this case, Plaintiff filed its action on May 31, 2018—approximately one month after Defendants Doe and Horner initiated the state court litigation. Accordingly, Plaintiff did not initiate her federal action "mere days or weeks" before the "'natural plaintiff'" (i.e., Defendants Doe and Horner). *Flowers*, 513 F.3d at 558 (citing *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004). Moreover, at the time Plaintiff filed suit it was not a party to the state litigation. Defendant Doe did not file her Second Amended Class Action Complaint to add Plaintiff as a defendant until July 31, 2018. Finally, Plaintiff contends it had no knowledge of the Doe and Horner Lawsuits, despite public reports. (Pl.'s Opp'n at 11).

Consequently, the Court finds no evidence that Plaintiff's actions were motivated by procedural fencing. Even if this action was "an attempt to preempt an issue which the state court would eventually consider, the Declaratory Judgment Act gives [Plaintiff] the right to do precisely that." *Flowers*, 513 F.3d at 558. "Absent some indication of an improper motive in the record, this third factor does not point toward denying jurisdiction." *Id.* at 559. Furthermore, as the Sixth Circuit stated in American *States Insurance Co. v. D'Atri*, 375 F.2d 761, 763 (6th Cir. 1967):

> We do not believe that, considering the purposes of the Federal Declaratory Judgment Act, the plaintiff should be forced into a waiting period of legal uncertainty respecting the obligations it has incurred in its policy.... [A] declaration of rights and duties, such as this plaintiff seeks, should not be refused

17

'because of the pendency of another suit if the controversy between the parties will not necessarily be determined in that suit. A declaratory judgment proceeding which involves only the extent of the coverage of an insurance policy and not the liability of the insured to the persons injured in the accident, will be entertained in the Federal Court, and the insurer is entitled to have the extent of the coverage of its policy declared in such a proceeding—other essentials of jurisdiction being present.'"

Like in *D'Atri*, Plaintiff seeks a declaration of its obligations under the Policy, not a finding of Defendant Smith's liability to Defendants Doe and Horner. Therefore, the Court finds that Plaintiff's decision to seek federal jurisdiction was not motivated by a race for *res judicata*. The third *Grand Trunk* factor weighs in favor of exercising subject matter jurisdiction.

### 4. Would Declaratory Action Create Friction with the State Court?

To determine whether exercising federal subject matter jurisdiction would create friction with the state court, the Court must consider three subfactors:

(1) whether the underlying factual issues are important to an informed resolution of the case;

(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale*, 211 F.3d at 968.

Turning to the first subfactor, the parties dispute whether the underlying factual issues are central to ascertaining the scope of Defendant Smith's insurance coverage. Defendant Doe contends that "[a] detailed understanding of the underlying factual issues in the state court litigation will undoubtedly be crucial" to resolving the present dispute. (Def.'s Mot. to Dismiss at 11). Specifically, Defendant Doe argues the Court must determine whether Defendant Smith's alleged acts or omissions constitute medical treatment or medical malpractice under the terms of

the Policy. (*Id.*). Plaintiff disagrees, arguing the insurance coverage controversy can be "decided strictly as a matter of contractual interpretation of [Defendant] Smith's insurance policy." (Pl.'s Opp'n at 12). In Plaintiff's view, the matter does not require detailed factual findings. (*Id.*).

When analyzing the first subfactor, the Sixth Circuit has noted the following:

> In the context of actions seeking a declaration of the scope of insurance coverage, we have recognized that such questions can sometimes be resolved as a matter of law and do not require factual findings by a state court. *See Northland*, 327 F.3d at 454; *Green*, 825 F.[2]d at 1067. Indeed, 'the liability issues being determined in the state court proceeding may well be legally, if not factually, distinct from the issues of policy interpretation which are central to the federal declaratory judgment action.' *Green*, 825 F.[2]d at 1067. However, sometimes resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court. See *Travelers*, 495 F.3d at 272. In such cases, the exercise of jurisdiction would be inappropriate. *Id.*

*Flowers*, 513 F.3d at 560. Thus, the Court must consider whether the extent of Defendant Smith's insurance coverage can be resolved as a matter of law.

Ohio courts have held that the "interpretation and construction of insurance policies is a matter of law to be determined by the court using rules of construction and interpretation applicable to contracts generally." *Reese v. George*, 15 N.E. 3d 397, 382 (8th Dist. Ohio Ct. App. 2014). Citing *Gomolka v. State Auto Mutual Insurance Co.*, 70 Ohio St. 2d 166, 167–168 (1982). Moreover, "[i]n insurance policies, as in other contracts, words and phrases are to be given their plain and ordinary meaning unless manifest absurdity results or some other meaning is clearly intended from the fact of [the] overall contents of the contract." *Id.* Citing *Neal-Pettit v. Lahman*, 2008 WL 5259726 (8th Dist. Ohio Ct. App. 2008). Accordingly, the Court may rely on canons of construction to decipher the terms in the Policy. The first subfactor weighs in favor of exercising jurisdiction.

19

The second subfactor (i.e., whether the state court is in a better position to resolve the dispute) presents a closer question. Defendant Doe analogizes the instant action to *Travelers*, 495 F.3d at 272, where the Sixth Circuit held that "because Kentucky law is controlling, we conclude that Kentucky courts are in the better position to apply and interpret it law on these issues." The *Travelers* court further held that "issues of 'insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar, and therefore, better able to resolve.'" *Id.* at 272 (citing *Bituminous*, 373 F.3d at 915). Defendant Doe avers that insurance contract interpretation is integral to this litigation, pointing out that the Court "will ultimately have to decide the unsettled Ohio law issue of whether Smith's acts and omissions constituted medical treatment and medical negligence." (Def.'s Mot. to Dismiss at 11). Specifically, Defendant Doe maintains that Ohio law does not specify whether allegedly improper touching during medical treatment, even if proven intentional, bars insurance coverage for malpractice. (*Id.* at 4).

Plaintiff rejects this argument, noting that "the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." *Flowers*, 513 F.3d at 559 (quoting *Allstate*, 825 F.2d at 1067). Plaintiff offers *Northland*, 327 F.3d at 454 in support of its position, where an insurer seeking a federal declaratory judgment "was not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defendant was before the state court." Rather than dismissing the action, the district court exercised its discretionary subject matter jurisdiction. *Id.* The Sixth Circuit upheld the decision, noting "[t]he resolution of the declaratory judgment action is not governed by federal common law or statutory law, but rather by state contract law. However, no state law or policy would be

frustrated by the district court's exercise of jurisdiction, which would require the application of [state] law." *Id.*

The Sixth Circuit "generally consider[s] state courts to be in a better position to evaluate novel questions of state law." *Flowers*, 513 F.3d at 560. Citing *Travelers*, 495 F.3d at 272. "For the federal courts to preempt the right of the state court to rule on a previously undetermined question of state law, more must be present than the desire of the insurance company to avoid the possibility of an unfavorable ruling in state court by convincing a federal judge to rule first." *Omaha Property and Casualty Insurance Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 2013). However, district courts should not "always turn away a declaratory judgment action when an undetermined question of state law is presented. *Scottsdale*, 211 F.3d at 969. Notably, the Sixth Circuit has stated that this consideration has "less force when the state law is clear and when the state court is not considering the issues." *Flowers*, 513 F.3d at 560. As correctly noted by Plaintiff, when an insurance company is "not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court ... a decision by the district court on these issues would not offend principles of comity." *Northland,* 327 F.3d at 454.

Here, Defendant Doe claims that the parties' insurance coverage agreement will implicate unsettled areas of Ohio tort law—particularly whether insurance coverage is available for alleged medical malpractice or chiropractic negligence in the form of sexual misconduct. The Court finds this argument unpersuasive. First, at least one Ohio court has commented on the applicability of the medical malpractice theory in the context of sexual abuse. *Ellis*, 2010 WL 1254639, at *5 n.1. In *Ellis*, a patient brought a tort action against her chiropractor, alleging malpractice, intentional or negligent infliction of emotional distress, spoliation of evidence,

21

tortious alteration of records, and negligent hiring or retention. *Id.* at *1. The suit arose from a

consensual sexual relationship between the patient and the chiropractor. *Id.* Although the

patient did not allege sexual abuse because the relationship was consensual, the court noted that a

medical malpractice type theory will not support a "claim based on an intentional act." *Id.* at *5

n.1. In other words, a patient may not frame sexual abuse from a medical practitioner as medical

malpractice. The *Ellis* court went on to state that "[sexual abuse] as an intentional act, . . .

generally would not be covered by professional malpractice insurance." *Id.* (citing *Zuidema v.*

*Pedicano*, 373 N.J. Super. 135 (2004)). Thus, Ohio law on this issue (while limited), is not

nonexistent.

Second, the Court affords this consideration slightly less weight. Unlike the *Northland*

plaintiff, Plaintiff is a party in the state court action. However, a state court may not address the

insurance coverage question without running afoul of O.R.C. § 2721.02(B). The Court finds the

situation described in *D'Atri*, 375 F.2d at 763 to be relatively analogous:

> There are, however, important differences in the matters presented in the district
> court and the [state court] proceedings. Whether the insurance company is
> contractually obligated to defend and protect [its insured] involves considerations
> that are not relevant to whether *1066 or not [the insured], as a matter of tort law,
> is liable for the damages incurred by [the tort plaintiff]. Since the [insurer] is not,
> and could not be, under Ohio law ... a party to the state court action, it is
> powerless under the district court's disposition of the case, presently to ascertain
> the scope of its liability. It must, consequently, defend a party to whom it does not
> believe it owes a duty, or assume the risk that that party will go defenseless–or be
> defended by someone whose interests are adverse to those of the company. In
> either event, should a judgment be rendered against [its insured], it must expose
> itself to future suits for collection, or bring another declaratory judgment action,
> and then assert the same theory it now seeks to have vindicated.

*Green*, 825 F.2d at 1065–1066. Citing *D'Atri*, 375 F.2d at 763. Here, Ohio law bars the

consideration of insurance coverage until tort liability is found. Consequently, as in *D'Atri*, a

denial of federal jurisdiction would force Plaintiff to defend "a party to whom it does not believe

it owes a duty" or run the risk of a subsequent bad faith claim. *Id.* Thus, Ohio courts—while better versed in Ohio law—are not in a better position to evaluate the insurance coverage question. Accordingly, the exercise of federal jurisdiction would not "offend principles of comity." *Northland,* 327 F.3d at 454. The second subfactor supports jurisdiction.

Finally, with respect to the third subfactor, the Court finds that the scope of Defendant Smith's medical malpractice insurance is tied to Ohio public policy. As noted by the Sixth Circuit in *Bituminous,* 373 F.3d at 815, "[s]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce public policies that form the foundation of such regulation." Moreover, the Supreme Court of Ohio has held that Ohio "public policy is contrary to insurance against intentional torts." *Wedge,* 31 Ohio St. 3d at 67. Citing *Blankenship v. Cincinnati Milacron Chemicals, Inc.,* 69 Ohio St. 2d 608, 615 (1982) (holding that insurance for intentional torts would allow employers to "commit intentional acts with impunity"); *Rothman v. Metropolitan Casualty Insurance Co.,* 134 Ohio St. 241, 245 (1938) ("[s]urely no one . . . could recover under such a policy damages sustained by reason of a willful and intentional injury inflicted by another"); *Portaro v. American Guarantee & Liability Insurance Co.,* 210 F. Supp. 411, 416 (N.D. Ohio 1962) (holding same). Accordingly, the "close nexus" between the factual issues and Ohio public policy favors a decision by the state court.

Because two of the three subfactors favor jurisdiction, the Court finds that a decision by the district court is unlikely to encroach on state jurisdiction. The fourth *Grand Trunk* factor weighs against dismissal.

### 5. Is There an Alternative Remedy?

Finally, the Court considers whether an alternative remedy is available. Defendant Doe argues that an alternative remedy exists in the form of Ohio's Declaratory Judgment Act, O.R.C.

§ 2721.02(B). (Def.'s Mot. to Dismiss at 12) (citing *Travelers*, 495 F.3d at 273 (holding that Kentucky's Declaratory Judgment Act provided an alternative remedy to federal jurisdiction)). Plaintiff counters that Defendant Doe's proposed alternative remedy would violate Ohio law. (Pl.'s Opp'n at 14). As noted by Plaintiff, seeking declaratory judgment under O.R.C. § 2721.02(B) is "statutorily prohibited unless and until [Defendant] Doe has a final judgment against the alleged tortfeasor." (*Id.*). Furthermore, Plaintiff argues that, even assuming judgment is eventually entered against Defendant Smith, utilizing Ohio's Declaratory Judgment Act will not provide an adequate alternative remedy. In Plaintiff's view, it "does not even have a duty to defend [Defendant] Smith." (*Id.*). Therefore, waiting to bring a declaratory judgment claim in state court will "have prejudiced [Plaintiff] from asserting it has no duty of defense." (*Id.*). Finally, Plaintiff argues that barring federal jurisdiction raises the risk of inconsistent state rulings because of the "multiplicity of these suits all grounded in the same types of allegedly sexually abusive acts by [Defendant] Smith." (*Id.* at 15).

A district court should "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk*, 746 F.2d at 326. "One of the alternative remedies available to the federal declaratory plaintiff is to seek a declaratory judgment in state court." *Flowers*, 513 F.3d at 562. In addition, a plaintiff could file an indemnity action after the conclusion of the state court case. *Id.* However, the *Flowers* court noted "it is not clear whether such alternative remedies are better or more effective than a federal declaratory action . . . our precedent is split regarding whether the possibility of seeking a declaratory judgment or an indemnity action in state court counsels against the district court exercising jurisdiction." *Id.* Comparing *Northland*, 327 F.3d at 448 ("intervening in the state court action would not have necessarily provided a better or more effective alternative remedy") with *Travelers*, 495 F.3d at 273 (holding that the

24

alternative remedies of a state declaratory judgment or indemnity action "weighed against federal discretionary jurisdiction"). Accordingly, the *Flowers* court concluded the inquiry is fact specific, "involving consideration of the whole package of options available to the federal declaratory plaintiff." *Flowers*, 513 F.3d at 562.

Here, Plaintiff may not assert a declaratory judgment action in state court until and unless judgment is entered against Defendant Smith. Consequently, this option provides Plaintiff with no ability to argue it has no duty to defend Defendant Smith. Rather, Plaintiff would be obligated to represent Defendant Smith in state court or risk the consequences of allowing Defendant Smith to proceed without counsel. The Court concludes a declaratory judgment action in state court is not a viable alternative remedy—much less a better or more effective one. Similarly, the Court finds an indemnity action would not be a superior alternative for Plaintiff. Plaintiff would have to wait until the liability issues were resolved before determining its contractual obligations to Defendant Smith. Thus, the fifth *Grand Trunk* factor favors federal jurisdiction.

### 6. Balancing the *Grand Trunk* Factors

On balance, the *Grand Trunk* factors weigh against dismissal. The first three factors point towards exercising jurisdiction. The fourth factor, while not entirely in favor of a federal forum, is "at worst neutral about the exercise of jurisdiction." *Id.* at 563. Finally, the fifth factor supports Plaintiff's position that state court remedies are not superior or more effective to a federal declaratory judgment. Accordingly, the Court finds that exercising federal subject matter jurisdiction is appropriate. Defendant Doe's Motion to Dismiss or Stay Proceedings is hereby **DENIED**. (ECF No. 8).

**VI.**

The Court did not consider the Supplemental Affidavit of Alexander J. Durst in support of Defendant Jane Doe's Motion to Dismiss or Stay Proceedings when reaching its decision. (ECF No. 31). Therefore, Plaintiff's Motion to Strike the Supplemental Affidavit is **DISMISSED AS MOOT**. (ECF No. 33).

**V.**

For the reasons set forth above, the Court **GRANTS** Plaintiff's Amended Motion for Leave to File Sur-reply (ECF No. 15); **DENIES** Defendant Doe's Motion to Strike Plaintiff's Sur-reply (ECF No. 17); and **DENIES** Defendant's Motion to Dismiss or Stay Proceedings (ECF No. 8). Plaintiff's Motion for Leave to File Sur-reply (ECF No. 14) and Plaintiff's Motion to Strike Alexander J. Durst's Affidavit in Support of Defendant Doe's Motion to Dismiss or Stay Proceedings (ECF No. 33) are **DISMISSED AS MOOT**.

**IT IS SO ORDERED.**

3-21-2019
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**

26