IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NCMIC INSURANCE CO.,

    Plaintiff,

v.

    Civil Action 2:18-cv-533
    CHIEF JUDGE EDMUND A. SARGUS, JR.
    Magistrate Judge Chelsey M. Vascura

RYAN D. SMITH, D.C., *et al.*,

    Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff NCMIC Insurance Company's ("Plaintiff") Motion for Summary Judgment (ECF No. 41); Plaintiff's Memorandum in Support of its Motion for Summary Judgment (ECF No. 42); Defendant Ryan Smith's ("Defendant Smith") Response in Opposition (ECF No. 46); Defendant Susanne Horner's ("Defendant Horner") Response in Opposition (ECF No. 47); Plaintiff's Reply to Responses in Opposition of Defendants Smith and Horner (ECF No. 49); Defendant Jane Doe's ("Defendant Doe") Response in Opposition (ECF No. 59); and Plaintiff's Reply to Defendant Doe's Response in Opposition and Motion to Strike Affidavit of Brandon Zoller, D.C. (ECF No. 60).

For the reasons that follow, Plaintiff's Motion for Summary Judgment is **DENIED** (ECF No. 41); and Plaintiff's Motion to Strike is **DENIED as moot** (ECF No. 60).

I.

### A. Defendant Doe and Defendant Horner Lawsuits

On April 25, 2018, Defendant Doe filed a Class Action Complaint against Defendant Smith in the Franklin County Court of Common Pleas on behalf of herself and others similarly-situated. (Exhibit B, ECF No. 1-3). Defendant Doe filed an Amended Class Action Complaint

on May 31, 2018, alleging claims of: (1) assault, (2) battery, (3) medical negligence or chiropractic malpractice, (4) negligence for failure to obtain informed consent, (5) negligent invasion of privacy, (6) false imprisonment, and (7) intentional infliction of emotional distress. (Exhibit C, ECF No. 1-4).

In her Amended Class Action Complaint, Defendant Doe alleged that Defendant Smith, a chiropractor, sexually assaulted her and over 40 other female patients during the course of his chiropractic treatment. (Amended Class Action Compl. ¶ 1, Exhibit C). Defendant Doe further alleged that Defendant Smith "acted negligently, and committed additional common law torts" against the potential class. (*Id.*). Specifically, Defendant Doe claimed that at treatment sessions between May 2017 and June 2017, Defendant Smith touched her breasts and "positioned [her] hand behind her back at waist level . . . and holding [her] arm firmly in place, pressed his genitals into [her] hands." (*Id.* ¶ 20). Defendant further claimed that Defendant Smith once required her to wear a medical gown so that he could "manipulate the gown to expose both of her breasts." (*Id.* ¶ 23).

On May 1, 2018, Defendant Horner filed suit against Defendant Smith in the Franklin County Court of Common Pleas. (Exhibit D, ECF No. 1-5). In her Complaint, Defendant Horner asserted claims of: (1) assault, (2) battery, (3) negligence, (4) negligence for failure to obtain informed consent, and (5) intentional infliction of emotional distress. (*Id.*). Defendant Horner alleged that in May 2017, Smith touched the "pectoralis muscle of [her] left breast in a way that made [her] feel uncomfortable" and "guided [her] hand behind her back and placed his penis in her hand." (Horner Compl. ¶¶ 11 & 15, Exhibit D).

## B. Defendant Smith's Insurance Policy with Plaintiff

Plaintiff, an Iowa insurance company, issued a Professional Liability Insurance Policy for Chiropractic Malpractice ("Policy") to Defendant Smith for the period of October 3, 2016 to October 3, 2017. (Exhibit A, ECF NO. 1-2) (Policy # MP00923418). The Coverage Agreement in Defendant Smith's Policy provided, in pertinent part:

1. **We** will pay on behalf of an **insured** all sums to which this insurance applies and for which an insured becomes legally obligated to pay as **damages** because of an **injury**. The **injury** must be caused by an accident arising from an **incident** during the **policy period**. The **injury** must also be caused by an **insured** under this policy.

2. **We** will also pay on behalf of the entity listed on the Declarations all sums for which this insurance applies and which the entity becomes legally obligated to pay as **damages** because of an **injury**. The **injury** must be caused by an accident arising from an **incident** during the **policy period**. The **injury** must also be caused by **you** or by an employee or independent contractor for whose **professional services** the entity is legally liable. The entity will share the limit of liability stated in the Declarations with **you**.

(Exhibit A at 6) (emphasis in original).

The Policy also includes a Defense and Settlement Clause, which reads as follows:

> **We** have the right and duty to defend any **claim** or suit brought seeking **damages** against the **insured** for an **injury** covered by this policy. **We** have the right to appoint counsel and **we** may investigate any **claim** made or suit brought. With **your** written consent, **we** may settle any **claim** or suit as **we** believe may be proper. **We** shall not be obligated to pay any **claim** or judgment or to defend or continue to defend any suit after the limit of our liability is exhausted because of payment of judgments or settlements. **Your** consent shall not be required to make a settlement or payment after a judgment has been entered against **you**.

(*Id.*) (emphasis in original).

Notably, the Policy includes several exclusions. Under the Exclusions provision, the Policy provides, in pertinent part:

> Despite any other provision of this policy, this policy does not apply to **claims** arising out of, based upon, or attributable to any of the following:

3

A. An act or omission violating any federal or state statute, or any county or municipal ordinance governing the commission of a crime.

B. False imprisonment; false arrest; libel; slander; defamation; invasion of privacy; discrimination.

C. Sexual impropriety, sexual intimacy, sexual assault, sexual harassment or any other similarly defined act.

D. The intentional infliction of **injury**.

E. Punitive or exemplary **damages**, fines, penalties imposed by law, or matters uninsurable under law pursuant to which this policy is construed, unless the law of the state in which the **insured** is licensed to practice prohibits such an exclusion.

(*Id.* at 8–9).

The relevant definitions for analyzing Defendant Smith's Policy include:

1. **Claim** means a written demand for money or services arising from an alleged **injury** to which this insurance applies.

3. **Injury** means bodily injury, sickness, disease or death sustained by any one person.

4. **Insured** means any person or entity listed under the "Persons Insured" section of this policy.[1]

5. **Incident** means any negligent omission, act or error in the providing of **professional services** by an **insured** or any person for whose omissions, acts or errors an **insured** is legally responsible. All such omissions, acts or errors causally related to the rendering of or failure to render **professional services** to one person shall be considered one **incident**. Causally related acts, errors and omissions includes acts, errors and omissions that have a common cause or form a causal chain of events. An **incident** shall be deemed to have occurred at the time of the earliest act, error or omission comprising that **incident**.

8. **Professional Services** means services which are within the scope of practice of a chiropractor in the state or states in which the chiropractor is licensed.

    **Professional Services** does not include any services furnished by an **insured** as a practitioner of any other healing or treating art.

(*Id.* at 5) (emphasis added).

---

[1] The "Persons Insured" section of the Policy notes that "[t]he persons insured under this policy are . . . [t]he insured listed on the Declarations." (Exhibit A at 7). Under the Professional Liability Declarations, Ryan D. Smith DC is the only person/entity insured. (*Id.* at 2).

4

## C. Procedural History

Plaintiff filed the instant action on May 31, 2018, seeking a declaratory judgment that it has no duty to defend, indemnify, or otherwise offer liability coverage to Defendant Smith in connection with any claims asserted by Defendants Doe and Horner. (Pl.'s Compl. ¶ A–H). On July 31, 2018, Defendant Doe filed a Motion to Dismiss Plaintiff's Complaint, or alternatively, a Motion to Stay Proceedings pending the conclusion of the underlying state court litigation. (ECF No. 8). The Court denied Defendant Doe's Motion to Dismiss or Stay Proceedings on March 21, 2019. (ECF No. 50).

On January 31, 2019, Plaintiff moved for summary judgment on its declaratory claims. (ECF No. 41). Defendant Smith and Defendant Horner each filed a Response in Opposition on February 20, 2019 and February 21, 2019 respectively. (ECF Nos. 46 & 47). On February 21, 2019, Defendant Doe filed a Motion for Discovery Pursuant to Rule 56(d). (ECF No. 48). In response, Plaintiff filed a joint Reply in Support of its Motion for Summary Judgment and Response in Opposition to Defendant Doe's Discovery Motion. (ECF No. 49). On May 2, 2019, the Court denied Defendant Doe's Discovery Motion. (ECF No. 58). Defendant Doe subsequently filed her Response in Opposition to Plaintiff's Motion for Summary Judgment. (ECF No. 59). Plaintiff filed a Reply brief and Motion to Strike the Affidavit of Brandon Zoller D.C. on May 14, 2019. (ECF No. 60). All motions are ripe for review.

## II.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element

of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

### III.

Plaintiff argues it has no duty to defend or indemnify Defendant Smith in the underlying state court actions because: (1) Defendant Smith's acts do not trigger liability coverage under the terms of the Policy, (2) Defendant Smith's acts are expressly excluded from coverage under the terms of the Policy, and (3) insurance coverage for sexual assault and intentional torts violates longstanding Ohio public policy. (Pl.'s Mot. for Summ. J. at 1, ECF No. 41; Pl.'s Mem. In Supp. at 12, ECF No. 42).

Defendant Smith counters that Plaintiff's allegations are "much broader than [it] represents and include[e] allegations of medical malpractice and lack of informed consent." (Def. Smith Opp'n at 1, ECF No. 46). In Defendant Smith's view, Plaintiff has a duty to defend

6

him from these negligence claims as a matter of law. (*Id.*). Defendant Horner agrees, noting that "[e]ven if the Court were to find that the claims based on assault and battery . . . fall outside the coverage provided by the [Policy], that does not excuse [Plaintiff] from providing a defense to [Defendant] Smith where other claims are arguably within the scope of the coverage." (Def. Horner Opp'n at 4, ECF No. 47).

Finally, Defendant Doe avers that Plaintiff's Motion for Summary Judgment should be denied as it relates to indemnification. (Def. Doe Opp'n at 1, ECF No. 59). According to Defendant Doe, "even if the [C]ourt concludes that [Plaintiff] has no obligation to *defend* [Defendant] Smith, summary judgment is entirely inappropriate with respect to indemnification." (*Id.* at 2) (emphasis in original). The Court begins its analysis with Plaintiff's potential duty to defend Defendant Smith.

### A. Plaintiff's Duty to Defend Defendant Smith

"The duty of an insurer to defend is separate and distinct from the duty to indemnify." *M/G Transport Services, Inc. v. Water Quality Ins. Syndicate*, 234 F.3d 974, 979 (6th Cir. 2000) (citing *Lessak v. Metropolitan Casualty Ins. Co. of New York*, 168 Ohio St. 153 (1958)). Under Ohio law, "whether an insurer has a duty to defend an action against an insured is initially determined by the scope of the pleadings. *Id.* at 977 (*See City of Willoughby Hills v. Cincinnati Insurance Co.*, 9 Ohio St. 3d 177, 179 (1984)). Thus, an insurer's duty to defend is not triggered by its actual legal liability. Rather, "[t]he duty attaches whenever the complaint states a covered claim, or *potentially* or *arguably* does so." *Id.* (emphasis in original). *See also Twin Maples Veterinary Hospital Inc. v. Cincinnati Ins. Co.*, 159 Ohio App. 3d 590, 594 (Ohio App. Ct. 2005) (quoting *Cincinnati Ins. Co. v. Anders*, 99 Ohio St. 3d 156 (2003)).

7

"If none of the claims in the complaint against the insured are potentially or arguably within the scope of the insurance policy, then the insurer has no duty to defend the insured. *Insurance Co. of State of Pennsylvania v. Vimas Painting Co., Inc.*, No 4:06-CV-1048, 2007 WL 1412988, at *8 (N.D. Ohio May 10, 2007) (citing *Wedge Products v. Hartford Equity Sales Co.*, 31 Ohio St. 3d 65 (1987)). However, once a court determines the insurer must defend one claim within a complaint, "it must defend the entire lawsuit, even though other claims may not come within the coverage of the policy." *Holloway Sportswear, Inc. v. Transportation Ins. Co.*, 177 F. Supp. 2d 764, 769 (S.D. Ohio 2001) (citing *Preferred Mutual Ins. Co. v. Thompson*, 23 Ohio St. 3d 78 (1986)).

The Supreme Court of Ohio has held "that an insurance policy is a contract, and that the relationship between the insurer and the insured is purely contractual in nature." *Nationwide Mutual Ins. Co. v. Marsh*, 15 Ohio St. 3d 107, 109 (1984) (citing *Ohio Farmers Ins. Co. v. Cochran*, 104 Ohio St. 427 (1922)). To determine the extent of a policy's coverage, "[a] court must give undefined words used in an insurance contract their plain and ordinary meaning." *Twin Maples*, 159 Ohio App. 3d at 596 (citing *Nationwide Mutual Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St. 3d 107, 108 (1995)). "Where provisions of a contract of insurance are reasonably susceptible [to] more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Id.* (citing *King v. Nationwide Ins. Co.*, 35 Ohio St. 3d 208 (1988)). However, when the "terms in an existing contract are clear and unambiguous, [the] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241, 246 (1978).

### 1. The Parties' Positions

Plaintiff contends the tort claims asserted by Defendants Doe and Horner do not arguably fall within the scope of the Policy's coverage. Plaintiff points out the Policy only covers an injury "which must be caused by an accident arising from an **incident** during the **policy period**." (Pl.'s Mem. in Supp. at 6) (citing Exhibit A at 5) (emphasis in original). The Policy defines an **"incident"** as "any negligent omission, act or error in the providing of **professional services** . . ." (*Id.*) (emphasis in original). In Plaintiff's view, Defendants Doe and Horner accuse Defendant Smith of sexual assault—intentional conduct which cannot be characterized as a negligent omission, act, or error. (*Id.* at 7). Accordingly, Plaintiff argues the alleged injuries are not covered by the Policy's Defense and Settlement Clause. (*Id.* at 11).

Plaintiff cites *Scott v. Borelli*, 106 Ohio App. 3d 449, 453–454 (Ohio App. Ct. 1995), where an Ohio appellate court held that a negligence claim grounded in sexual battery was subject to the statute of limitations for assault and battery. The *Borelli* court noted that pleading "negligence and intentional infliction of emotional distress cannot be allowed to mask or change the fundamental nature of [a party's] causes of action which are predicated upon acts of sexual battery." *Id.* Plaintiff also cites *Colter v. Spanky's Doll House*, No. 21111, 2006 WL 235045 (Ohio App. Ct. Jan. 27, 2006), where the court granted summary judgment in favor of the insurer by declaring it owed no duty to defend or indemnify with regard to a fatal shooting on the insured's property.

Defendant Smith asserts "an insurer's duty to defend is determined by the facts as alleged, not the legal theory of liability asserted in the Complaint." (Def. Smith's Opp'n at 4) (citing *GrantTech International, Ltd v. Pacific. Employers Ins. Co.*, 101 N.E. 3d 1271 (Ohio App. Ct. 2017); *Whaley v. Franklin County Board of Commrs.*, 92 Ohio St. 3d 574, 576 (2001)).

9

Here, Defendant Smith argues "[i]t cannot be seriously disputed that [Defendants Doe and Horner] have, in addition to sexual assault, asserted that [Defendant] Smith negligently encountered their breasts and hands while performing chiropractic services." (*Id.* at 3). In addition, Defendant Smith claims *Borelli* and *Colter* are distinguishable from the instant action. First, Defendant Smith points out that *Borelli* "involved a statute of limitations issue, not a coverage issue." (*Id.*) (citing *Borelli*, 106 Ohio App. 3d at 449). Second, Defendant Smith contends the *Colter* court interpreted an "entirely different exclusion" clause which applied regardless of fault or intent. (*Id.*) (citing *Colter*, 2006 WL 235045, at *2).

Defendant Horner makes similar arguments, contending that "the claims based on negligence and informed consent, at a minimum, arguably fall within the coverage provided by [the] Policy." (Def. Horner's Opp'n at 4). As Defendant Horner notes, "[o]nly if there is no possibility of coverage under the policy based on the allegations in the complaint will the insurer not have a duty to defend the action." (*Id.*) (quoting *Lexington Ins. Co. v. DunnWell, LLC*, 69 N.E. 3d 1066, 1081 (Ohio App. Ct. 2016); *American Chemical Soc'y v. Leadscope, Inc.*, No. 04AP-305, 2005 WL 1220746, at *3 (Ohio App. Ct. May 24, 2005)). Defendant Horner asserts "there is no dispute that [she] was a patient of [Defendant] Smith or that she was receiving chiropractic treatment on the date the incident occurred." (*Id.*). Accordingly, Defendant Horner maintains that, properly construing the facts in Defendant Smith's favor, the negligence claims trigger a duty to defend.

Defendant Doe focuses her arguments on Plaintiff's alleged duty to indemnify, rather than its duty to defend. (*See* Def. Doe Opp'n). However, Defendant Doe notes that "[u]nder Ohio law, an insurer's duty to defend a suit is even broader than its duty to indemnify." (*Id.* at 12) (citing *Sharonville v. American Employers Ins. Co.*, 109 Ohio St. 3d 186, 189 (2006)).

10

## 1. Analysis of Plaintiff's Duty to Defend

The Policy's Defense and Settlement Clause provides, in relevant party: "[w]e have the right and duty to defend any **claim** or suit brought seeking **damages** against the **insured** for an **injury** covered by this policy." (Exhibit A at 6) (emphasis in original). The Policy further states that, to invoke coverage: "[t]he **injury** must be caused by an accident arising from an **incident** during the **policy period**." (*Id.*) (emphasis in original). An "incident" is defined as: "any negligent omission, act or error in the providing of **professional services** by an **insured** or any person for whose omissions, acts or errors an **insured** is legally responsible . . ." (*Id.* at 5) (emphasis in original).

### a. Intentional Torts

Considering the plain language of the Policy, the Court finds that Plaintiff's duty to defend does not extend to intentional torts. An intentional tort cannot be reasonably characterized as a "negligent omission, act or error." (Exhibit A at 5). Moreover, the Policy excludes the following intentional acts from coverage:

- A. An act or omission violating any federal or state statute, or any county or municipal ordinance governing the commission of a crime.

- B. False imprisonment; false arrest; libel; slander; defamation; invasion of privacy; discrimination.

- C. Sexual impropriety, sexual intimacy, sexual assault, sexual harassment or any other similarly defined act.

- D. The intentional infliction of **injury**.

(*Id.* at 23) (emphasis in original).

As Plaintiff accurately notes, "a court will only apply an exclusion where it is **clearly** intended." (Pl.'s Mem. in Supp. at 9) (emphasis in original) (citing *Sharonville v. American Employers Ins. Co.*, 109 Ohio St. 3d 186, 187 (2006)). Here, Defendant Smith's alleged assault,

11

battery, false imprisonment, and intentional infliction of emotional distress fit squarely within the Policy's exclusions. False imprisonment is explicitly excluded from coverage in provision B. In addition, intentional infliction of emotional distress unambiguously constitutes an "intentional infliction of **injury**" under provision D.

Finally, the actions underlying the claims of assault and battery are rooted in sexual misconduct—including allegations that Defendant Smith exposed patients' breasts, touched their breasts, and placed his genitals in contact with patients while performing chiropractic procedures. Consequently, the Court agrees with Plaintiff that the underlying complaints "unquestionably allege a pattern of sexual assault and impropriety," therefore triggering exclusion C. (*Id.* at 9). Because the intentional torts asserted by Defendants Doe and Horner are not covered under the terms of the Policy, Plaintiff owes Defendant Smith no duty to defend on these claims. *See Twin Maples*, 159 Ohio App. 3d at 594–595 (quoting *Cincinnati Indemn. Co. v. Martin*, 85 Ohio St. 3d 604, 605 (1999) ("[t]he insurer need not provide a defense if there is no set of facts alleged in the complaint which, if proven true, would invoke coverage")).

### b. Negligence

Applying the plain meaning of "negligent omission, act or error," the Court finds that the parties intended Defendant Smith's Policy coverage to extend to negligent conduct. *See Twin Maples*, 159 Ohio App. 3d at 596 (holding that identical insurance policy language, i.e., "negligent omission, act or error," "clearly and unambiguously covers only any 'act, error, or omission' that is negligent"). Both Defendants Doe and Horner assert claims for negligence and failure to obtain informed consent in their respective complaints. (Exhibit C; Exhibit D). Consequently, the underlying pleadings allege claims which arguably fall within the terms of the Policy's coverage.

However, the Court's analysis does not end there. Plaintiff correctly notes that the Defense Settlement Clause limits the duty to defend to an "**injury** covered by this policy." (Pl.'s Mem. in Supp. at 11) (citing Exhibit A at 5) (emphasis in original). Because Plaintiff contends that: (1) Defendant Smith committed sexual misconduct, and (2) sexual misconduct is excluded from Policy coverage, it urges the Court to ignore "conclusory labels" of negligence in the underlying complaints. (Pl.'s Opp'n to Defs. Smith and Horner at 4, ECF No. 49). Plaintiff cites *Nye v. Ellis*, No. 09-CA-0080, 2010 WL 1254639, at *5, in which an Ohio appellate court held there was no "genuine issue of material fact that [a chiropractor's] consensual relationship with [his patient] was in fact medical malpractice because [he] breached the standard of care." (Pl.'s Mem. in Supp. at 8). Analogizing *Ellis* to the instant action, Plaintiff argues "[n]o reasonable mind could conclude that sexual assault falls 'within the scope of practice of a chiropractor in the state.'" (*Id.*) (quoting Exhibit A at 5).

Ohio law "provides that where . . . a policy does not obligate an insurer to defend against frivolous claims, a court may consider events outside the pleadings to determine the duty to defend." *M/G Transport*, 234 F.3d at 978–979 (citing *Preferred Risk Ins. Co. v. Gill*, 30 Ohio St. 3d 108, 114–115 (1987)).[2] In doing so, the court may examine the factual allegations in the

---

[2] In *Gill*, an insurer sought a declaratory judgment that it had no duty to defend or indemnify its insured against a tort lawsuit brought by the parents of a child whom the insured murdered. *Id.* at 108. The insurance policy made no representation that the insurer would defend against any suit, "even if such suit [was] groundless, false or fraudulent." *Id.* at 114. Turning to the true facts of the case, the *Gill* court held the conduct asserted in the "wrongful death action was intentional, rather than negligent as alleged in the underlying complaint." *Id.* at 115. Refusing to "feign ignorance of a criminal conviction which clearly takes the conduct outside coverage," the court declared the insured had no duty to defend. *Id.* at 113 & 115.

The Supreme Court of Ohio limited *Gill* to its facts in *Cincinnati Ins. Co. v. Colelli & Associates, Inc.*, 95 Ohio St. 3d 325, 326 (2002). Moreover, Ohio courts have consistently distinguished *Gill*. *See Vimas*, 2007 WL 1412988, at 16 (the insurer did not demonstrate the insurer's failure to provide adequate medical services to overseas worker was "intentional or so otherwise indisputably outside of the insurance coverage that it has no duty to defend"); *Physicians Ins. Co. of Ohio v. Swanson*, 58 Ohio St. 3d 189 (1991) ("[i]n order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the

13

underlying complaint to determine whether they "support a cause of action within the scope of the policy's coverage." *Burlington Ins. Co. v. Eden Cryogenics LLC*, 126 F. Supp. 3d 947, 958 (S.D. Ohio 2015) (citing *Twin Maples*, 159 Ohio App. 3d at 597).

For instance, in *Twin Maples* an Ohio appellate court found the underlying allegations that the insureds "unlawfully, fraudulently, and improperly conspired and colluded among themselves to thieve and convert . . . bonus pool money" did not support a negligence claim. *Twin Maples*, 159 Ohio App. 3d at 597. The *Twin Maples* court found there was no duty to defend, despite the fact that the insureds' negligence claims were arguably covered under the insurance policy. *Id.* at 598. Yet in *Burlington*, this Court found the underlying factual allegations that the insurers "improperly used" trade secrets to start a competing company could support a finding of "mere negligence." *Burlington*, 126 F. Supp. 3d at 958. As negligence was a covered claim, this Court found the insured had a duty to defend. *Id.*

In this case, there is an interpretation of the facts that would support a finding of negligence. To establish a cause of action for failure to obtain informed consent, the plaintiff must satisfy the following elements: (1) the physician failed to "disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy," (2) "the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient," and (3) "a reasonable person in the position of the patient would have decided against the therapy had

---

insurer must demonstrate that the injury itself was expected or intended"); *GNFH, Inc. v. West American Ins. Co.*, 172 Ohio App. 3d 127 (Ohio App. Ct. 2007) (insurer has duty to defend insured from bodily injury claims allegedly stemming from physical assault and battery); *Nationwide Mutual Ins. Co. v. Machniak*, 74 Ohio App. 3d 638, 641 (assault conviction did not affirmatively establish intent to harm for purposes of insurance coverage).

14

the material risks and dangers inherent and incidental to treatment been disclosed." *White v. Leimback*, 131 Ohio St. 3d 21, 26 (2011).[3]

Here, Defendant Doe alleges that Defendant Smith "failed to disclose . . . [the] material risks and dangers inherent in the procedures [Defendant] Smith proposed to perform on her. Specifically, [he] failed to disclose to [Defendant Doe] the risk that the treatment ran the risk of [her] breasts being touched or exposed, as well as the risk that her hand would be pressed against his genitals." (Exhibit C at 11). Defendant Horner similarly alleges that Defendant Smith fell below the standard of reasonable chiropractic care by failing "to disclose to [Defendant Horner] the risk that her breasts would be touched or exposed, as well as the risk that her hand would be in contact with his penis." (Exhibit D at 9). Construing the evidence in the light most favorable to the nonmovants, these alleged facts support a cause of action that Defendant Smith negligently failed to obtain informed consent concerning "inadverten[t] or accidenta[l] touch[ing]" during treatment. (Def. Smith's Opp'n at 4).

In contrast, the *Ellis* complaint alleged that "[the chiropractor defendant] exploited his position of trust for the purpose of taking advantage of [the plaintiff] and otherwise engaged in practices contrary to acceptable and prevailing standards of medical and chiropractic care." *Ellis*, 2010 WL 1254639, at *5. The *Ellis* plaintiff further asserted via affidavit that "[the chiropractor defendant] fell below the standard of care by engaging in a consensual sexual relationship with [the plaintiff]." *Id.* Such factual allegations did not meet the elements of a malpractice claim under Ohio law, i.e., "the failure of one rendering services in the practice of a

---

[3] Plaintiff argues that Defendant Doe and Defendant Horner's claims for a "'lack of informed consent' against [Defendant] Smith are truly 'lack of consent' claims which are claims for battery." (Pl.'s Reply to Doe and Horner Opp'ns at 7, ECF No. 49). Plaintiff's argument is not well taken. Defendants Doe and Horner pleaded causes of action for failure to obtain informed consent. (Exhibits C & D). This Court will analyze the claims as alleged.

15

profession to exercise that degree of skill and learning normally applied by members of that profession in similar circumstances." *Id.* at *4 (quoting *Strock v. Pressnell*, 38 Ohio St. 3d 207 (1988)). Thus, the *Ellis* plaintiff's alleged facts did not support a finding of negligence.

Finally, the Court agrees with Defendant Smith that *Borelli* and *Colter* are distinguishable from the instant action. Although *Borelli* stands for the proposition that parties should not "mask or change the fundamental nature of [their] causes of action," it concerns a statute of limitations dispute, not an insurance coverage question. Moreover, Ohio law is clear that an insurer's duty to defend is largely based on the pleadings. *Willoughby*, 9 Ohio St. 3d at 179 (*see also Sanderson v. Ohio Edison Co.*, 69 Ohio St. 3d 582 (1994) ("[a]n insurer has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy"); *Motorists*, 33 Ohio St. 2d at 41 (duty to defend does not depend on "the ultimate outcome of the action")).

*Colter* is distinguishable from the present case on its facts. Under the terms of the insurance agreement in *Colter*, the insurer had no "duty to defend or indemnify any insured or any other person against any claim or *suit* for *bodily injury, property damage, personal injury* or *advertising injury*, including claims or suits for *negligence* . . ." *Colter*, 2006 WL 235045, at *4 (emphasis in original). Thus, in *Colter*, a negligence claim could not trigger a duty to defend regardless of whether the underlying alleged facts supported such a claim. In this case, the Policy's Defense and Settlement Clause extends the duty to defend to negligent conduct. (Exhibit A at 6).

Accordingly, Defendants Doe and Horner assert negligence claims which arguably fall within the terms of the Policy's coverage. In addition, the factual allegations in the Doe and Horner complaints could support a finding of negligence. For these reasons, Plaintiff's Motion

16

for Summary Judgment regarding its duty to defend is **DENIED**. The Court **DECLARES** that Plaintiff has a duty to defend Defendant Smith in the underlying state court actions as a matter of law. Because Plaintiff has a duty to defend Defendant Smith against negligence claims, Plaintiff's duty to defend extends to all claims. *See Holloway*, 177 F. Supp. 2d at 769.

## B. Plaintiff's Duty to Indemnify Defendant Smith

An insurer's "duty to indemnify is triggered by the insured's actual legal liability." *Twin Maples*, 159 Ohio App. 3d at 594 (citing *GuideOne Mutual Ins. Co. v. Reno*, No. 01-CA-68, 2002 WL 857682, at *3 (Ohio App. Ct. Apr. 26, 2002)). "In contrast to a duty to defend, which looks to the allegations of a complaint (and, potentially, subsequent allegations), a duty to indemnify 'arises from the conclusive facts and resulting judgment' of the underlying litigation." *AMCO Ins. Co. v. Lauren-Spencer, Inc.*, 500 F. Supp. 2d 721, 726 (S.D. Ohio 2007) (quoting *Pilkington North America, Inc. v. Travelers Casualty & Surety Co.*, 112 Ohio St. 3d 482, 487 (2006)). As a result, an insurer's duty to indemnify is much narrower than its duty to defend. *See Chiquita Brands International Inc. v. National Union Ins. Co.*, 57 N.E. 3d 97, 105–106 (Ohio App. Ct. 2015).

### 1. The Parties' Positions

Plaintiff reiterates its earlier arguments with respect to its duty to indemnify Defendant Smith. Specifically, Plaintiff contends that Defendant Smith's actions are: (1) not covered under the Policy, and (2) expressly excluded under the Policy. (Pl.'s Mem. in Supp. at 6–10). Additionally, Plaintiff argues that its duty to indemnify Defendant Smith is extinguished by longstanding Ohio public policy that "insurance coverage does not exist for sexual assaults and intentional torts." (*Id.* at 12) (citing *Doe v. Shaffer*, 90 Ohio St. 3d 388, 391 (2000) ("we have long adhered to the view that Ohio prohibits insuring against liability for one's own intentional

17

torts")). Once again citing *Ellis*, Plaintiff points out that "Ohio courts are apprehensive to approach a finding that sexual assault amounts to a breach of professional malpractice as doing so would condone the idea that such sexual impropriety is in the scope of a person's professional practice." (*Id.*) (citing *Ellis*, 2010 WL 1254639, at *9 n.1).

Plaintiff also relies on *Gearing v. Nationwide Ins. Co.*, 76 Ohio St. 3d 34, 38 (1996), in which the Ohio Supreme Court found that "**[l]iability insurance does not exist to relieve wrongdoers of liability for intentional, antisocial, criminal conduct.**" (Pl.'s Mem. in Supp. at 12) (emphasis added). According to Plaintiff, the holding in *Gearing* suggests that "permitting malpractice insurance coverage in a situation such as the one [Defendant] Smith is facing here would create a moral hazard." (Pl.'s Mem. in Supp. at 13). Plaintiff reasserts that Defendants Doe and Horner "fai[l] to allege any specific facts (other than attorney argument) . . . that would differentiate [their] negligence claims from the intentional tort claims. Rather, [their] negligence-based claims are merely derivative of [their] intentional tort allegations." (*Id.* at 10). Consequently, Plaintiff avers it "should not be forced to provide insurance coverage for such despicable, intentional acts as are alleged in the Doe Class and Horner Actions." (*Id.* at 13).

Defendant Doe maintains that "Plaintiff's motion [for summary judgment] is highly premature, since whether indemnification is owed will depend on the ultimate outcome of the state court case, which is still pending." (Def. Doe's Opp'n at 1). Specifically, Defendant Doe alleges that "summary judgment is heavily disfavored in actions by insurance companies seeking a declaration that they are not required to indemnify—*as opposed to defend*—their insured in a pending lawsuit." (*Id.* at 11) (citing *Fed. Ins. Co. v. Cintas Corp.*, No. 1:04-CV-00697, 2005 WL 8161542, at *3 (S.D. Ohio Nov. 15, 2005)). Defendant Doe also contends that the Policy exclusions do not apply in her suit against Defendant Smith. (*Id.* at 12). According to Defendant

Doe, the Policy draws a distinction between "claims" and "suits." Applying the plain meaning of the word "suit," Defendant Doe concludes the Policy references "suits at law." (*Id.* at 3). In contrast, Defendant Doe argues the word "claim" only encompasses pre-litigation demands for money or services. (*Id.*). As the Policy only provides exclusions for claims, Defendant Doe concludes the exclusions do not bar coverage for causes of action asserted in her suit.

### 2. Analysis of Plaintiff's Duty to Indemnify

Plaintiff's argument that insurance coverage for Defendant Smith's alleged intentional torts is barred by both Policy language and Ohio public policy is well taken. Moreover, Plaintiff accurately notes that "[t]he mere insinuation of negligence in a civil suit complaint cannot transform what are essentially intentional torts into something 'accidental' that might be covered by insurance. (Pl.'s Reply to Doe Opp'n at 7) (citing *Chiquita Brands International, Inc. v. National Union Ins. Co.*, 988 N.E. 2d 897, 901 (Ohio App. Ct. 2013)). In fact, Ohio courts have inferred an intent to harm exclusion where "the act 'is so inherently injurious that it cannot be performed without causing the resulting injury.'" *Gearing*, 76 Ohio St. 3d at 39 (citing *Vermont Mutual Ins. Co. v. Malcolm*, 128 N.H. 521, 524 (1986)).

However, a genuine dispute of material fact exists as to whether Defendant Smith committed intentional torts against Defendants Doe and Horner. Plaintiff states, "it is clear from [Defendant] Smith's conviction for 66 counts of sexual imposition as well as the nearly identical allegations made by [Defendants] Doe and Horner against [Defendant] Smith in their respective complaints that [Defendant] Smith committed unauthorized touching." (Pl.'s Reply to Doe Opp'n at 7–8). Yet Defendant Smith avers that "[a]ll physical contact [he] made with [Defendant Doe] was either for the purpose of providing chiropractic treatment or incidental to the provision of chiropractic treatment." (Def. Smith's Response to Request for Admission,

19

Exhibit A at 5, ECF No. 59-1). Defendant Smith denies that he intentionally touched Defendant Doe's breasts, or intentionally caused his genitals to come in contact with her hand. (*Id.* at 1–2).

At this stage in the litigation, no jury has resolved whether Defendant Smith acted intentionally, negligently, both, or neither. Because an insurer's duty to indemnify is fact dependent, the Court cannot conclude that Plaintiff has no duty to indemnify Defendant Smith as a matter of law. Accordingly, Plaintiff's Motion for Summary Judgment with respect to its duty to indemnify is **DENIED without prejudice**. The Court may revisit Plaintiff's arguments, on motion, at the conclusion of the underlying state court actions.

## IV.

The Court did not consider the Affidavit of Brandon Zoller, D.C. when reaching its decision. (Def. Doe's Opp'n at 8–9). Therefore, Plaintiff's Motion to Strike the Affidavit of Brandon Zoller D.C. is **DENIED as moot**. (ECF No. 60).

## V.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED** (ECF No. 41); and Plaintiff's Motion to Strike is **DENIED as moot** (ECF No. 60). The Court **DECLARES** that Plaintiff has a duty to defend Defendant Smith against all state court claims.

**IT IS SO ORDERED.**

_5-30-2019_
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE